JUDGE ABRAMS

ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - X
                              :
UNITED STATES OF AMERICA      :
                              :    **SEALED INDICTMENT**
        - v. -                :
                              :    20 Cr.
YOEL ABRAHAM,                 :
HESHL ABRAHAM,                :    **20 cr 411**
ZISHE ABRAHAM, and            :
SHMUEL ABRAHAM,               :
                              :
        Defendants.           :
                              :
- - - - - - - - - - - - - - - X

**COUNT ONE**
(Conspiracy to Commit Wire Fraud)

The Grand Jury charges:

Overview of the Fraudulent Scheme

1. From in or about 2017, through in or about 2019, YOEL ABRAHAM, HESHL ABRAHAM, ZISHE ABRAHAM, and SHMUEL ABRAHAM, the defendants, and others known and unknown, engaged in a scheme to systematically defraud an online retailer and e-commerce platform ("Online Retailer-1"). In connection with the foregoing scheme, the defendants attempted to obtain at least approximately $32 million dollars and fraudulently obtained at least approximately $19 million dollars.

2. The defendants conspired to open vendor accounts with Online Retailer-1 and, by accepting purchase orders issued by Online Retailer-1, agreed to supply small quantities of goods to Online-Retailer-1. Instead of supplying the requested goods, the

defendants manipulated Online Retailer-1's invoicing systems and billing procedures using a practice known as "overshipping." The defendants shipped, invoiced, and received payment for goods that Online Retailer-1 had not agreed to purchase, or for prices and quantities to which Online Retailer-1 had not agreed. Once Online Retailer-1 detected the pattern of fraudulent overshipping by the defendants, it suspended the vendor accounts engaged in the fraud; in response, the defendants tried to open other vendor accounts and disguise their identities by registering them in fake names, using different email addresses, and using virtual private networks (VPNs) to obfuscate their connection to previously suspended accounts and frustrate Online Retailer-1's ability to detect and mitigate their fraudulent activity.

Background: Online Retailer-1's E-Commerce Platform

3. Online Retailer-1 sells consumer goods directly to customers and allows other retailers to use its platform to sell to customers ("Third Party Sales" or "Third Party Sellers"). Certain consumer goods have modest sales volumes and therefore Online Retailer-1 does not keep such items in stock. When a customer purchases such item, Online Retailer-1 will buy small quantities of that item wholesale from third party wholesalers or retailers. A business that wishes to sell wholesale to

Online Retailer-1 must apply to become a vendor ("Vendor") and then register an online vendor account with Online Retailer-1. When Online Retailer-1 buys goods from one of its Vendors, it does so pursuant to a purchase order issued by Online Retailer-1 that the Vendor must accept and confirm before a sale can be initiated.

4. All goods purchased or sold on Online Retailer-1 carry an alphanumeric identifier ("ASIN") assigned by Online Retailer-1. Each ASIN has a corresponding product page on Online Retailer-1's website. The product page sets forth all details regarding the product, including the quantity of goods contained within a unit (i.e., a two-pack of toothbrushes or a 12-pack of razors). When Online Retailer-1 purchases goods from a Vendor, the purchase order includes, among other things, the product's ASIN, the number of units, and the price per unit. By qualifying as a Vendor, Online Retailer-1's systems also permit Vendors, though their vendor accounts, to edit the product detail pages associated with particular ASINs to ensure that they accurately describe the product.

5. When Online Retailer-1 issues a purchase order to its Vendors, the Vendors must confirm its terms, which include the product(s), the ASIN(s), the unit price, and the number of units ordered. After goods arrive at the warehouse, the Vendor must

fill out and submit an invoice form through their vendor account that must include, among other things, the ASIN(s) and the reference number associated with the purchase order.

### Relevant Entities & Individuals

6. At all times relevant to this Indictment, Vendor-1 was a limited liability company ("LLC") incorporated in Rockland County, New York. Its address for service of process was a particular address in Monsey, New York (the "Monsey-1 Address"). From at least in or about March 2018, Vendor-1 maintained a vendor account with Online Retailer-1 registered in the name of YOEL ABRAHAM, the defendant, at a particular address in Newburgh, New York ("Newburgh-1 Address").

7. At all times relevant to this Indictment, Vendor-2 was a business incorporated in Rockland County, New York. Its address for service of process was the Monsey-1 Address. From at least August 2017, Vendor-2 maintained a vendor account with Online Retailer-1 registered in the name of YOEL ABRAHAM, the defendant, at the Monsey-1 Address.

8. At all times relevant to this Indictment, Vendor-3 was an LLC incorporated in Rockland County, New York. Its address for service of process was a particular address in Spring Valley, New York ("Spring Valley-1 Address"). From at least July 2017, Vendor-3 maintained two vendor accounts with Online

4

Retailer-1 registered in the name of HESHL ABRAHAM, the defendant, at the Spring Valley-1 Address.

9. At all times relevant to this Indictment, Vendor-4 was an LLC incorporated in Kings County, New York. Its address for service of process was a particular address in Brooklyn (the "Brooklyn-1 Address"). From at least September 2017, Vendor-4 maintained a vendor account with Online Retailer-1 registered in the name of ZISHE ABRAHAM, the defendant, at a particular address in Brooklyn ("Brooklyn-2 Address").

10. At all times relevant to this Indictment, Vendor-5 was an LLC incorporated in Rockland, New York owned and operated by SHMUEL ABRAHAM, the defendant. Its address for service of process was the Monsey-1 Address. From at least April 2018, Vendor-5 maintained a vendor account with Online Retailer-1 registered in the name of "Sam Abr," at a particular address in Valley Cottage, New York ("Valley Cottage-1 Address").

11. At all times relevant to this Indictment, Vendor-6 was an LLC incorporated in Rockland County, New York, owned and operated by SHMUEL ABRAHAM, the defendant. Its address for service of process was the Monsey-1 Address. From at least November 2017, Vendor-6 maintained a vendor account with Online Retailer-1 registered in the name of "Shmuel Abr," at the Monsey-1 Address.

## The Fraudulent Invoicing and Overshipping Scheme

12. Beginning in or around 2017, YOEL ABRAHAM, HESHL ABRAHAM, ZISHE ABRAHAM, and SHMUEL ABRAHAM, the defendants, and others known and unknown, used vendor accounts to engage in an "overshipping" scheme, as described below. First, they agreed to sell Online Retailer-1 specific goods, at specific prices, in specific quantities, as requested by Online Retailer-1. Then, the defendant manipulated Online Retailer-1's vendor system, and shipped and invoiced Online Retailer-1 for items far in excess of the number of units ordered, and fraudulently induced Online Retailer-1 to pay the inflated invoices. In the most egregious iteration of the scheme, the defendants confirmed purchase orders, manipulated Online Retailer-1's vendor system, and then invoiced Online Retailer-1 for substitute goods at grossly inflated prices and excessive quantities. For example:

a. In or around August 2018, Vendor-1 confirmed one purchase order and thereby agreed to ship Online Retailer-1 one case containing 12 cannisters of a particular disinfectant spray with a particular ASIN ("ASIN-1"), at a cost of $94.03 per pack. Instead, Vendor-1 manipulated Online Retailer-1's vendor system and shipped and invoiced Online Retailer-1 for 7,000 individual toothbrushes, bearing ASIN-1, for $94.03 each, and invoiced Online Retailer-1 approximately $658,210. Online Retailer-1 sent

6

the fraudulently induced payment of $628,843 to a Vendor-1 bank account ending in -1021 ("Account-1021"), opened at a bank branch in Rockland County, whose sole signatory was YOEL ABRAHAM, the defendant.

b. On or about July 17, 2018, Vendor-3 confirmed a purchase order and agreed to ship one unit of a particular designer perfume with a particular ASIN ("ASIN-2"), at a unit price of $289.78. Instead, Vendor-3 manipulated Online Retailer-1's vendor system and shipped 927 units of a plastic beard trimming tool, bearing ASIN-2, to Online Retailer-1, for $289.78 each, and invoiced Online Retailer-1 approximately $268,626. Online Retailer-1 sent the fraudulently induced payment to a bank account ending in 7635 ("Bank Account-7635"), which was opened at a bank brannch in Rockland County, and whose sole signatory is HESHL ABRAHAM, the defendant.

13. In a different iteration of the invoicing fraud scheme, the defendants would confirm a purchase order—thereby agreeing to ship the goods stated at the prices and in the quantities stated—and then simply ship and invoice Online Retailer-1 for excessive quantities of goods. The defendants frequently shipped and invoiced for more than 10,000 units of an item when Online Retailer-1 had requested, and the defendants had agreed to ship, less than 100. For example:

7

...

a. Between in or about February 2018 and in or about August 2018, over the course of five purchase orders, Online Retailer-1 ordered 93 units of three different items from Vendor-3. Vendor-3 instead shipped and invoiced for 2,614 units.

b. Between in or about January 2018 and in or about August 2018, over the course of 10 purchase orders, Online Retailer-1 ordered 288 units of 11 different items from Vendor-4. Vendor-4 instead shipped 27,612 units. Online Retailer-1 sent the fraudulently induced payments to a bank account ending in 2996 ("Bank Account-2996"), whose sole signatory is ZISHE ABRAHAM, the defendant.

c. Between in or about December 2017 and in or about April 2018, over the course of 16 purchase orders, Online Retailer-1 ordered 275 units of 16 different items from Vendor-6. Vendor-6 instead shipped 64,480.

d. Between in or about May 2018 and in or about August 2018, over the course of 13 purchase orders, Online Retailer-1 ordered one unit of 14 different items from Vendor-5. Vendor-5 instead shipped 53,892 units of these items. Online Retailer-1 sent the fraudulently induced payments to a bank account ending in 1326 ("Bank Account-1326"), whose sole signatory is SHMUEL ABRAHAM, the defendant.

8

a. Between in or about February 2018 and in or about August 2018, over the course of five purchase orders, Online Retailer-1 ordered 93 units of three different items from Vendor-3. Vendor-3 instead shipped and invoiced for 2,614 units.

b. Between in or about January 2018 and in or about August 2018, over the course of 10 purchase orders, Online Retailer-1 ordered 288 units of 11 different items from Vendor-4. Vendor-4 instead shipped 27,612 units. Online Retailer-1 sent the fraudulently induced payments to a bank account ending in 2996 ("Bank Account-2996"), whose sole signatory is ZISHE ABRAHAM, the defendant.

c. Between in or about December 2017 and in or about April 2018, over the course of 16 purchase orders, Online Retailer-1 ordered 275 units of 16 different items from Vendor-6. Vendor-6 instead shipped 64,480.

d. Between in or about May 2018 and in or about August 2018, over the course of 13 purchase orders, Online Retailer-1 ordered one unit of 14 different items from Vendor-5. Vendor-5 instead shipped 53,892 units of these items. Online Retailer-1 sent the fraudulently induced payments to a bank account ending in 1326 ("Bank Account-1326"), whose sole signatory is SHMUEL ABRAHAM, the defendant.

8

14.  Typically when a Vendor sends excess goods, Online Retailer-1 will assume it is an error and request clarification; overshipping over certain thresholds may result in chargebacks. When Online Retailer-1 detects a pattern of overshipping, however, it blocks and deactivates the vendor account.

15.  To successfully execute the fraudulent scheme, YOEL ABRAHAM, HESHL ABRAHAM, ZISHE ABRAHAM and SHMUEL ABRAHAM, the defendants, worked together to evade detection, exploit Online Retailer-1's systems, and to increase their earnings through overshipping. The defendants communicated about the scheme, shared and coordinated their respective efforts to defraud Online Retailer-1, and extended help and advice to one another using an encrypted group texting chain on WhatsApp, a messaging application. All four defendants, who are brothers, were members of the texting group, which was named after the Monsey-1 Address where their parents lived and where YOEL ABRAHAM, for a time, operated the e-commerce businesses scheme out of the basement. For example:

a. On or about March 20, 2018, YOEL ABRAHAM, the defendant, advised the others how to engage in invoicing fraud without being detected ("Have one account that your straight 100% 1 account you do whatever the fuck you want with (make money . . ."). In response, HESHL ABRAHAM, the defendant, sent

9

the group a spreadsheet that he used to track the extent to which he wanted to defraud Online Retailer-1 on a particular purchase order. ZISHE ABRAHAM, the defendant, indicated that he tracked his fraudulent overshipping similarly ("I made the same file"), so that he could track the proceeds of the fraud on a weekly basis ("every week is another tab so I know what's going on and my profits").

   b. On or about May 1, 2018, YOEL ABRAHAM, the defendant, stated to the group "I'm so in the mood to fuck [Online Retailer-1]," and asked "Did anyone try to overship and make a million profit in a week?" ZISHE ABRAHAM, the defendant, asked how YOEL ABRAHAM would do it ("Come in [sic] how to do it?"). SHMUEL ABRAHAM, the defendant, offered his advice on how to carry out such a large fraudulent transaction, noting he "didn't tried this yet but tried already different things and it worked." SHMUEL ABRAHAM cautioned, however, "[j]ust make sure you have another account. But you can fuck them a lot. When it's to big numbers fast they will lock you out." ZISHE ABRAHAM, the defendant, also offered his thoughts on how best to perpetrate such a large overshipment.

   c. The defendants also advised one another on how best to respond when Online Retailer-1 periodically caught them overshipping. For instance, on June 25, 2018, YOEL ABRAHAM, the

defendant, turned to the other defendants when Online Retailer-1 detected a large overshipment, and ZISHE ABRAHAM, the defendant, dictated to him a false response to use to claim the overshipment was an error.

d. Throughout their WhatsApp text conversations, the defendants repeatedly discussed how to evade detection by Online Retailer-1. For instance, on or about November 1, 2018, the defendants discussed that Online Retailer-1's increasing enforcement was going to force them to give up the fraudulent invoicing scheme altogether (YOEL ABRAHAM: "This shit is massed up, looks like will have to build a legit business"). They also discussed new ways to evade detection and how to continue to perpetrate the fraud (YOEL ABRAHAM: "Open account under dummy names and they can go look for no one." ZISHE ABRAHAM: "Yup need to do that. . . . The problem the first accounts was under real names.").

e. A few days later, on or about November 5, 2018, the defendants discussed how to avoid Online Retailer-1 detecting the links between their multiple vendor accounts, including by using virtual private servers ("VPS") to mask the location of their logins. The use of a VPS would make it more difficult for Online Retailer-1 to determine that the same device was logging into multiple vendor accounts when one vendor account had been

blocked for fraudulent activity. YOEL ABRAHAM, the defendant, texted the group, "Guys don't open more the one vendor on your computer they are linking accounts big time;" in response, HESHL ABRAHAM, the defendant, circulated a link to a "VPS company I use now . . . . This is how I know because they linked both of my vendor accounts.").

## Statutory Allegations

16. The allegations set forth in paragraph 1 to 15 are repeated and realleged, and incorporated by reference as if fully set forth herein.

17. From at least in or about 2017 up to and including at least in or about 2019, in the Southern District of New York and elsewhere, YOEL ABRAHAM, HESHL ABRAHAM, ZISHE ABRAHAM, and SHMUEL ABRAHAM, the defendants, and other known and unknown, willfully and knowingly combined, conspired, confederated and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1349.

18. It was a part and object of the conspiracy that YOEL ABRAHAM, HESHL ABRAHAM, ZISHE ABRAHAM, and SHMUEL ABRAHAM, the defendants, and others known and unknown, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit

and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writing, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, YOEL ABRAHAM, HESHL ABRAHAM, ZISHE ABRAHAM, and SHMUEL ABRAHAM, used Online Retailer-1 vendor accounts to accept and confirm purchase orders for specific goods at specific prices and specific quantities, and then shipped and invoiced Online Retailer-1 for different goods, or vastly inflated quantities, or both, and used and caused the use of interstate wire communications in furtherance of those acts, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

## COUNT TWO

### (Wire Fraud)

The Grand Jury further charges:

19.  The allegations set forth in paragraph 1 through 15 are repeated and realleged, and incorporated by reference as if fully set forth herein.

20.  From at least in or about 2017 up to and including at least in or about 2019, in the Southern District of New York and elsewhere, YOEL ABRAHAM, HESHL ABRAHAM, ZISHE ABRAHAM, and SHMUEL ABRAHAM, the defendants, having devised and intending to

devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, YOEL ABRAHAM, HESHL ABRAHAM, ZISHE ABRAHAM, and SHMUEL ABRAHAM used the Online Retailer-1 vendor accounts to accept and confirm purchase orders for specific goods at specific prices and specific quantities, and then shipped and invoiced Online Retailer-1 for different goods, or in vastly inflated quantities, or both, and used and caused the use of interstate wire communications and transfers in furtherance of those acts.

(Title 18, United States Code, Sections 1343 and 2.)

### COUNT THREE

### (Monetary Transactions Involving Crime Proceeds)

The Grand Jury further charges:

21. The allegations in paragraphs 1 to 15 are realleged and incorporated as if fully set forth herein.

22. From at least in or around 2017 through at least in or around 2020, in the Southern District of New York and elsewhere, YOEL ABRAHAM, the defendant, willfully and knowingly, within the

United States, did engage and attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, YOEL ABRAHAM, routinely transferred funds in excess of $10,000 from a bank account that received proceeds from engaging in the offenses charged in Counts One and Two of this Indictment, to other bank accounts he also controlled.

(Title 18, United States Code, Sections 1957(a) and 2.)

### COUNT FOUR

### (Monetary Transactions Involving Crime Proceeds)

The Grand Jury further charges:

23. From at least in or around 2017 through in or around 2020, in the Southern District of New York and elsewhere, HESHL ABRAHAM, the defendant, willfully and knowingly, within the United States, in an offense involving and affecting interstate and foreign commerce, did engage and attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, HESHL ABRAHAM, routinely transferred funds in excess of $10,000 from a bank account that received proceeds from engaging in the offenses charged in Counts One and Two of this Indictment, to other bank accounts he also controlled.

(Title 18, United States Code, Sections 1957(a) and 2.)

## COUNT FIVE

(Monetary Transactions Involving Crime Proceeds)

The Grand Jury further charges:

24. From at least in or around 2017 through in or around 2020, in the Southern District of New York and elsewhere, ZISHE ABRAHAM, the defendant, willfully and knowingly, within the United States, in an offense involving and affecting interstate and foreign commerce, did engage and attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, ZISHE ABRAHAM, routinely transferred funds in excess of $10,000 from a bank account that received proceeds from engaging in the offenses charged in Counts One and Two of this Indictment, to other bank accounts he also controlled.

(Title 18, United States Code, Sections 1957(a) and 2.)

## COUNT SIX

(Monetary Transactions Involving Crime Proceeds)

The Grand Jury further charges:

25. From at least in or around 2017 through in or around 2020, in the Southern District of New York and elsewhere, SHMUEL ABRAHAM, the defendant, willfully and knowingly, within the United States, in an offense involving and affecting interstate and foreign commerce, did engage and attempt to engage in a

monetary transaction in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, SHMUEL ABRAHAM, routinely transferred funds in excess of $10,000 from a bank account that received proceeds from engaging in the offenses charged in Counts One and Two of this Indictment, to other bank accounts he also controlled.

(Title 18, United States Code, Sections 1957(a) and 2.)

### FORFEITURE ALLEGATIONS: COUNTS ONE AND TWO

26. As a result of committing the offenses alleged in Counts One and Two of this Indictment, YOEL ABRAHAM, HESHL ABRAHAM, ZISHE ABRAHAM, and SHMUEL ABRAHAM, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real or personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

## FORFEITURE ALLEGATIONS: COUNTS THREE THROUGH SIX

27. As the result of committing the offenses alleged in Counts Three, Four, Five, and Six of this Indictment, YOEL ABRAHAM, HESHL ABRAHAM, ZISHE ABRAHAM, and SHMUEL ABRAHAM, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in the offenses, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense.

### Substitute Asset Provision

28. If any of the above described forfeitable property, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code,

Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981,
Title 21, United States Code, Section 853(p), and
Title 28, United States Code, Section 2461(c).)

_____
FOREPERSON

_____
AUDREY STRAUSS
Acting United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

YOEL ABRAHAM, HESHL ABRAHAM, ZISHE ABRAHAM, and SHMUEL ABRAHAM

Defendants.

INDICTMENT

20 Cr. \_\_\_

(Title 18, United States Code,
Sections 1343, 1349, 1957(a) & 2.)

AUDREY STRAUSS
Acting United States Attorney.

**A TRUE BILL**

Foreperson.