NAQQyoeP

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     UNITED STATES OF AMERICA
 3
                 v.                          20 CR 411 (RA)
 4                                           Plea

 5   YOEL ABRAHAM

 6               Defendant
     ------------------------------x
 7
                                             New York, N.Y.
 8                                           October 26, 2023
                                             10:15 a.m.
 9

10   Before:

11                      HON. RONNIE ABRAMS
                                          District Judge
12

13                        APPEARANCES

14   DAMIAN WILLIAMS
          United States Attorney for the
15        Southern District of New York
     JILAN J. KAMAL
16        Assistant United States Attorney

17   SHER TREMONTE LLP
          Attorney for Defendant
18   JUSTINE A. HARRIS

19

20   ALSO PRESENT:  SAMANTHA LUEVAMOS, Paralegal (Def)

21

22

23

24

25
```

NAQQyoeP

1              (In open court; case called)

2              DEPUTY CLERK:  Counsel, please state your name for the

3     record.

4              MS. KAMAL:  Good morning, your Honor.  Jilan Kamal on

5     behalf of the United States.

6              THE COURT:  Good morning.

7              MS. HARRIS:  Good morning, your Honor.  Justine Harris

8     for Mr. Yoel Abraham.  With the Court's permission, my

9     paralegal Samantha Luevamos is at counsel table as well.

10             THE COURT:  Yes.  Good morning to all of you.  I'm

11    sorry to get started a little late today.

12             I had thought that Mr. Abraham was pleading guilty

13    pursuant to a plea agreement pursuant to which he was pleading

14    guilty to an information, but I understand now he is pleading

15    guilty just to the indictment.  Can you clarify for me exactly

16    which counts he's pleading guilty to.

17             MS. HARRIS:  Your Honor, he's pleading to all three

18    counts, Counts One, Two and Three alleging wire fraud, wire

19    fraud conspiracy and 18 U.S.C. 1957.

20             THE COURT:  Understood.

21             Mr. Abraham, I understand that you intend to plead

22    guilty to Counts One, Two and Three today of the indictment.

23    Is that correct?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  So I'm going to start by asking you

NAQQyoeP

1    questions to ensure that you're competent to plead guilty.  I

2    ask these questions of every defendant in this situation.

3    First though, I'm going to ask my deputy to swear you in, okay?

4              (Defendant sworn)

5              THE COURT:  First, how old are you?

6              THE DEFENDANT:  31.

7              THE COURT:  Sorry.  How old are you?

8              THE DEFENDANT:  31.

9              THE COURT:  31.  I'm sorry.  I had trouble hearing

10   you.  How far did you go in school?

11             THE DEFENDANT:  Yeshiva.

12             THE COURT:  Did you complete Yeshiva?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Are you now or recently been under the

15   care of a medical professional, or psychiatrist or other mental

16   healthcare provider?

17             THE DEFENDANT:  No.

18             THE COURT:  Have you ever been hospitalized for mental

19   illness, alcoholism or drug addiction?

20             THE DEFENDANT:  No.

21             THE COURT:  In the past 24 hours, have you taken any

22   drugs, medicine, pills or drunk any alcoholic beverages?

23             THE DEFENDANT:  No.

24             THE COURT:  Is your mind clear today?

25             THE DEFENDANT:  Yes.

NAQQyoeP

1          THE COURT:  Do you understand what's happening in
2     these proceedings?
3          THE DEFENDANT:  Yes.
4          THE COURT:  Does either counsel have any doubt as to
5     Mr. Abraham's competence to plead guilty at this time?
6          MS. KAMAL:  No.
7          MS. HARRIS:  No, your Honor.
8          THE COURT:  Have you had enough time and
9     opportunity -- well, let me just start by saying on the basis
10    of Mr. Abraham's responses to my questions, and my observations
11    of his demeanor here in court and representations of counsel, I
12    find that he is fully competent to enter an informed plea of
13    guilty at this time.
14         Have you had enough time and opportunity to discuss
15    your case with your attorney?
16         THE DEFENDANT:  Yes.
17         THE COURT:  Have you discussed with her the nature of
18    the charges you intend to plead guilty to, any possible
19    defenses to those charges, and the rights you're giving up?
20         THE DEFENDANT:  Yes.
21         THE COURT:  Has your attorney discussed with you the
22    consequences of pleading guilty?
23         THE DEFENDANT:  Yes.
24         THE COURT:  Are you satisfied with your attorney's
25    representation of you?

NAQQyoeP

1           THE DEFENDANT:  Yes.

2           THE COURT:  So now I'm going to explain certain

3     constitutional rights that you have.  These are rights that you

4     will be giving up if you enter a guilty plea.  First, under the

5     Constitution and laws of the United States, you have a right to

6     plead not guilty to the charges in the indictment.

7           Do you understand that?

8           THE DEFENDANT:  Yes.

9           THE COURT:  If you did plead not guilty, you'd be

10    entitled under the Constitution to a speedy and public trial by

11    a jury of those charges.  Do you understand that?

12          THE DEFENDANT:  Yes.

13          THE COURT:  In advance of trial, if you were to go to

14    trial, you would have the opportunity to seek suppression of

15    any or all of the evidence against you on the basis that it was

16    obtained in violation of the Constitution.

17          Do you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  At trial, again, if you chose to go to

20    trial, you would be presumed innocent.  That means that you

21    would not have to prove that you were innocent.  Instead, the

22    government would need to prove your guilt beyond a reasonable

23    doubt before you could be found guilty.  So even if you did

24    nothing or said nothing at trial, you could not be convicted

25    unless a jury of 12 people agreed unanimously that you are

NAQQyoeP

1    guilty.  Do you understand that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  During trial, if you chose to go to trial,

4    the witnesses for the prosecution would have to come to court

5    and testify in your presence, where you could see them and hear

6    them, and your lawyer could cross-examine them.  If you wanted

7    to, your lawyer could offer evidence on your behalf.  You would

8    be able to use the court's power to compel or force witnesses

9    to come to court to testify truthfully in your defense even if

10   they didn't want to come.

11             Do you understand that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Again, if you went to trial, you would

14   have the right to testify if you wanted to, but you would also

15   have the right not to testify.  And if you chose not to

16   testify, that could not be used against you in any way.  No

17   inference or suggestion of guilt could be made from the fact

18   that you chose not to testify.

19             Do you understand that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  At trial, and at every stage of your case,

22   you would be entitled to be represented by an attorney.  And if

23   you could not afford an attorney, one would be appointed at

24   public expense to represent you; that means free of cost.

25             Do you understand that?

NAQQyoeP

1        THE DEFENDANT:  Yes.

2        THE COURT:  If you were convicted if you went to

3  trial, you would have the right to appeal that verdict to a

4  higher court.

5        Do you understand that?

6        THE DEFENDANT:  Yes.

7        THE COURT:  As I said before, you have the right to

8  plead not guilty.  So even as you sit here right now for

9  purposes of entering a guilty plea, you can change your mind

10  and you can decide to go to trial.  But if you do plead guilty,

11  and I accept your plea, there will be no trial, and you will

12  give up the rights that I just described.  Do you understand

13  that?

14        THE DEFENDANT:  Yes.

15        THE COURT:  If you plead guilty, all that will remain

16  to be done is for the Court, for me, to impose sentence.  I'm

17  not going to do that today.  I'm going to enter a judgment of

18  guilty, and I will sentence you after considering whatever

19  submissions I get from your lawyer, from the government, as

20  well as a presentence report prepared by the probation

21  department.  But there will be no appeal with respect to

22  whether the government could use the evidence it has against

23  you or with respect to whether you did or did not commit the

24  crime.  Do you understand that?

25        THE DEFENDANT:  Yes.

NAQQyoeP

| | |
|---|---|
| 1 | THE COURT:  If you plead guilty, you will also be |
| 2 | giving up your right not to incriminate yourself, since I'm |
| 3 | going to be asking you questions today about what you did in |
| 4 | order to satisfy myself that you are in fact guilty as charged. |
| 5 | Do you understand that? |
| 6 | THE DEFENDANT:  Yes. |
| 7 | THE COURT:  Thank you. |
| 8 | So what I am going to ask now, I'm going to ask the |
| 9 | government to go through and for each of the three counts to |
| 10 | state the elements of the counts and the maximum penalties as |
| 11 | well. |
| 12 | MS. KAMAL:  Yes, your Honor. |
| 13 | With respect to Count One of the indictment, which |
| 14 | charges the defendant with conspiracy to commit wire fraud in |
| 15 | violation of 18 U.S.C., Section 1349, the conduct has two |
| 16 | elements -- sorry -- the offense has two elements: |
| 17 | First, that two or more people agreed to engage in a |
| 18 | scheme to defraud that involved the use of interstate wires as |
| 19 | charged in the indictment. |
| 20 | And, second, that the defendant knowingly entered that |
| 21 | agreement knowing its objective to commit wire fraud and |
| 22 | intending to join together with at least one other conspirator |
| 23 | to achieve that objective. |
| 24 | The objective of the conspiracy, wire fraud, which is |
| 25 | also Count Two, has three elements: |

NAQQyoeP

1          First, that there existed a scheme or artifice to

2     defraud or to obtain money or property by materially false and

3     fraudulent pretenses, representations, or promises.

4          Second, that the defendant knowingly participated in

5     the scheme or artifice to defraud with knowledge of its

6     fraudulent nature and with specific intent to defraud.

7          And, third, that in executing that scheme, the

8     defendant used or caused the use of interstate wires.

9          With respect to Count Three, monetary transactions

10    involving crime proceeds, that offense has four elements:

11         First, that the defendant engaged in a monetary

12    transaction of greater than $10,000.

13         Second, the funds used in the transaction were the

14    proceeds of specific unlawful activity; namely, the wire fraud

15    conspiracy and substantive wire fraud schemes alleged in Counts

16    One and Two of the indictment.

17         Third, the defendant engaged in these transactions

18    knowingly and willfully.

19         Fourth, that the funds traveled in interstate

20    commerce.

21         THE COURT:  So let's just stop there on the elements.

22         I want to make sure that you understand, Mr. Abraham,

23    that if you were to go to trial, the government would need to

24    prove all of those elements beyond a reasonable doubt before

25    you could be convicted of those crimes.

NAQQyoeP

1          Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Now I'm going to discuss the maximum

4    penalties.  The maximum is the most that could possibly be

5    imposed.  It doesn't necessarily mean that that is the sentence

6    you will receive, but you have to understand that by pleading

7    guilty, you are exposing yourself to the possibility of

8    receiving any combination of punishments up to the maximums I'm

9    about to describe.  So I just want to confirm with the parties

10   that with respect to Counts One and Two, do you agree that the

11   maximum term of imprisonment is 20 years, there's a maximum

12   term of supervised release of three years, and a maximum fine

13   of a million dollars.  Is that correct?

14         MS. KAMAL:  That's correct.

15         THE COURT:  All right.  I'm just going to slow that

16   down a little bit, Mr. Abraham.

17         So with respect to your liberty for both of Count One

18   and Count Two, the maximum term of imprisonment for that crime

19   is 20 years in prison.

20         Do you understand that?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Any term of imprisonment may be followed

23   by a term of supervised release of up to three years.

24   Supervised release means that if you're sentenced to prison,

25   after you're released from prison, you will be subject to

NAQQyoeP

1    supervision of the probation department.  You will be required

2    to obey certain rules.  And if you violate those rules, you can

3    be returned to prison without a jury trial to serve additional

4    time even beyond your original sentence.

5              Do you understand that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  You should also understand that there is

8    no parole in the federal system.  So if you're sentenced to

9    prison, you will not be released early on parole, although

10    there is a limited opportunity to earn credit for good

11    behavior.  Do you understand that?

12              THE DEFENDANT:  Yes.

13              THE COURT:  In addition to these restrictions on your

14    liberty, the punishment for both of the crimes, both Counts One

15    and Two, includes certain financial penalties.  The maximum

16    allowable fine is $1 million, twice the gross pecuniary gain

17    derived from the offense, or twice the gross pecuniary loss to

18    persons other than yourself resulting from the offense.

19              Do you understand that?

20              THE DEFENDANT:  Yes.

21              THE COURT:  I'm also required to impose a mandatory

22    special assessment of $100 for each count.  So that's $200 for

23    Counts One and Two, and I'll talk about Count Three in a

24    minute, but that will be for that as well.

25              In addition, I must order restitution to any persons

NAQQyoeP

1    or entities injured as a result of your criminal conduct, and I

2    can order you to forfeit all property derived from the offense

3    or used to facilitate the offense.

4            Do you understand that?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Do you understand that those are the

7    maximum penalties for both Count One and Count Two?

8            THE DEFENDANT:  Yes.

9            THE COURT:  Is Mr. Abraham now being prosecuted or, to

10   the extent that you know, investigated in any other

11   jurisdiction?

12           MS. KAMAL:  No, your Honor.

13           THE COURT:  Now let's talk about Count Three.

14           The maximum sentence for Count Three is what?

15           MS. KAMAL:  Ten years, your Honor.

16           THE COURT:  And that's three years of supervised

17   release?

18           MS. KAMAL:  Yes, your Honor.

19           THE COURT:  And the fine, is that $250,000 or is it

20   more?

21           MS. KAMAL:  It is $250,000, your Honor, but the

22   alternative fine provisions also apply.

23           THE COURT:  Thank you.

24           Now let's just talk about Count Three, which is the

25   count that charges you with monetary transactions involving

NAQQyoeP

1  crime proceeds.  The maximum allowable sentence is ten years in

2  prison for this crime.  Do you understand that?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And I already talked about supervised

5  release.  Do you recall that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  For this crime, the maximum term of

8  supervised release is a term of three years in prison -- the

9  maximum allowable fine -- excuse me -- is three years of

10 supervised release.  I misspoke.

11          Do you understand that?

12          THE DEFENDANT:  Yes.

13          THE COURT:  But again, there's a ten-year maximum for

14 a prison term.

15          And then with respect to the fine, the maximum

16 allowable fine for this crime is $250,000, twice the gross

17 pecuniary gain derived from the offense, or twice the gross

18 pecuniary loss to persons other than yourself resulting from

19 the offense.

20          Do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  I'm also, as I said earlier, required to

23 impose the mandatory special assessment of $100, and for this

24 crime as well, I must order restitution to any persons or

25 entities injured as a result of your criminal conduct.  I can

NAQQyoeP

1    order you to forfeit all property derived from the offense or

2    used to facilitate the offense.

3           Do you understand that those are the maximum penalties

4    for Count Three?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Now, you should be aware that the

7    punishments that I just described are those that may be part of

8    a sentence, but being convicted of a felony may have other

9    consequences.  Are you a United States citizen?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Okay.  So then you should understand that

12   as a result of your guilty plea, you may lose certain valuable

13   civil rights to the extent that you have them now, like the

14   right to vote, the right to hold public office, the right to

15   serve on a jury, and the right to possess any kind of firearm.

16          Do you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Now, in imposing sentence, federal judges

19   are required to consider the recommendations of the Federal

20   Sentencing Guidelines.  The guidelines are a complicated set of

21   rules for determining an appropriate sentence.  Although judges

22   must take into account the Sentencing Guidelines when

23   determining a sentence, in the end the judge is required to

24   give the sentence that she believes best satisfies the purposes

25   of the criminal law as set forth in a provision of the law as

NAQQyoeP

1    18 United States Code, section 3553(a), even if that's higher

2    or lower than the guidelines recommendation.

3              Do you understand all of that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Have you discussed Sentencing Guidelines

6    with your attorney?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Do you understand that they are only

9    recommendations to the Court?

10             THE DEFENDANT:  Yes.

11             THE COURT:  I don't think I received a Pimentel letter

12   in this case.  Did you submit one?  I know this was all last

13   minute but did you submit one?

14             MS. KAMAL:  I did not, your Honor.

15             THE COURT:  I think -- do you have a guidelines

16   calculation that you can provide to Mr. Abraham?  Because I

17   think it's important for him to have an understanding of the

18   guidelines range consistent with the principle behind the

19   Pimentel case to have an understanding of the guidelines range

20   that he's facing.

21             MS. KAMAL:  I can represent to the Court that there

22   have been extensive discussions with defense counsel regarding

23   various ways of calculating Mr. Abraham's exposure.  I believe

24   counsel is aware of the government's -- I believe the chief

25   driver of any guidelines calculation here would be the

NAQQyoeP

calculation under 2B1.1.  I can confer with counsel right now

to ensure that she is aware of the government's maximum

position with respect to 2B1.1, but that has been communicated

to counsel in the past, and counsel was advised last night that

the government would be seeking its maximum position under the

guidelines were the defendant to plead open here today.

            THE COURT:  Ms. Harris.

            MS. HARRIS:  Your Honor, I can confirm what the

government represented.  I think part of the -- it may make

sense not to sort of lock in everyone's precise position with

respect to the enhancement under 2B1.1 because there are a

number of legal and factual issues that I think will ultimately

drive what the appropriate enhancement is, but it's fair to say

that the range of that enhancement could be ultimately anywhere

from close to zero to $15 million depending on resolution of

several complex issues.  So I think my client -- my client

understands that, and you can confirm that, but obviously

that's a very big swing.  It's part of the reason why we are --

and I apologize for the late notice with respect to pleading

open to the indictment, but there are just -- he's accepting

responsibility for all of the factual underpinnings, but there

are certain issues that need to be resolved before that

enhancement will be fixed.

            THE COURT:  That's fine.  And of course he is

welcome -- he is free, of course, to plead guilty open to the

NAQQyoeP

```
 1  indictment, but I do think it's important for the record I
 2  don't know if legally we need a Pimentel letter.  It seems,
 3  Ms. Harris, that you appear to be waiving it.  I don't want to
 4  speak for you.  But I do think the government needs to state
 5  its position as to at least its understanding of what
 6  Mr. Abraham's guidelines look like.  And if you want to put
 7  caveats to that depending on some of the issues that have been
 8  in debate, you can do that too, but I do think it's important
 9  to get that on the record and make sure Mr. Abraham understands
10  it.
11          MS. KAMAL:  Your Honor, if the Court can give me five
12  minutes.
13          THE COURT:  Absolutely.
14          MS. KAMAL:  I can do that right now.  I would just
15  want to make sure that I've covered all the bases.
16          THE COURT:  Why don't we take a break.
17          Ms. Harris, I understand that means the government is
18  not locked into their position, and you can feel free to
19  advocate to the government to move its position from where it
20  might be, but I do think it's very important for the record
21  that Mr. Abraham know what the government's position is.  And
22  what I would normally say when I have a Pimentel letter is that
23  this is the government's current position, and it may change
24  its position.  And I'm going to tell Mr. Abraham that, but I
25  still think it's important to get that on the record.
```

NAQQyoeP

1          Why don't we take a five minute break, and why don't

2    you just tell me when you're ready to proceed.

3          MS. KAMAL:  Will do, your Honor.

4          THE COURT:  Thank you.

5          (Recess)

6          THE COURT:  Just so you understand, I want to make

7    sure you understand what we're talking about, Mr. Abraham.

8          In a case where a defendant is not pleading guilty

9    pursuant to a plea agreement, the government writes what's

10   called a Pimentel letter.  It's just a letter that was named

11   after the name of a case.  And the idea is for the government

12   to explain how it believes the guidelines apply to your case so

13   that you have an expectation of what their position will be.

14   They can change their position if they want to, but it's

15   important for you to have that expectation and discuss it with

16   your lawyer, their present opinion.  Does that all make sense?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Ms. Harris, do you have any objection to

19   having the Pimentel letter essentially be presented in an oral

20   fashion instead of a formal letter because we can adjourn this

21   proceeding and meet again?

22         MS. HARRIS:  No.  That's fine, Judge.

23         THE COURT:  All right.

24         MS. KAMAL:  So, your Honor, the government's position

25   with respect to the defendant's exposure is as follows:

NAQQyoeP

1          Notwithstanding the fact that the defendant is charged

2     in three counts, these three counts group with the base offense

3     level of the grouped counts being seven, the government would

4     see fit to apply an application of the sophisticated means

5     guidelines which increases the base offense level to 9.  The

6     government would then under 2B1.1 determine that the intended

7     or attempted loss here was greater than $9.5 million but less

8     than $25 million, which would enhance the base offense level

9     from what was 9 to 29 now for a total offense level of 29.  The

10    government determines that the defendant has a Criminal History

11    Level of I.  At the present time, that would result in an

12    offense level of 29, and a Category I Criminal History

13    resulting in a guidelines range of 87 to 108 months.

14          THE COURT:  How would that be changed with the new

15    amendment?

16          MS. KAMAL:  With the new amendment --

17          THE COURT:  Reduced by two levels?

18          MS. KAMAL:  -- it would be reduced by two points, your

19    Honor, that's correct, to 27.

20          THE COURT:  Sorry.

21          MS. HARRIS:  Although I don't think the calculation

22    takes into account the three points for acceptance yet.

23          THE COURT:  Sorry.  Go on.

24          MS. KAMAL:  It does not.

25          THE COURT:  You keep going.  I didn't mean to

NAQQyoeP

```
1    interrupt.

2              MS. KAMAL:  Not to worry.

3              So, as an initial matter, the calculation of the

4    guidelines with the offense level of 29, a Criminal History

5    Category of I, under the current guidelines regime would result

6    in a sentencing range of 87 to 108 months.

7              As the Court noted, and as defense counsel has noted,

8    this does not take into account either (A) the amendments to

9    the guidelines that are currently pending.  At the present

10   time, it does appear to the government that the defendant would

11   be eligible for the two-point reduction in offense level

12   applicable to certain first-time offenders which would reduce

13   his criminal history -- which would reduce -- forgive me -- the

14   offense level from 29 to 27.  It also does not take into

15   account acceptance of responsibility.

16             THE COURT:  Do you have any reason to believe that the

17   government would not be acknowledging that the defendant has

18   indeed accepted responsibility and would get the three points

19   off for that.

20             MS. KAMAL:  Your Honor, I can't take a position on

21   that point at this time.

22             THE COURT:  Okay.

23             So, Ms. Harris, do you want to take a minute and

24   discuss that with Mr. Abraham and just make sure he understands

25   what the government just stated?
```

NAQQyoeP

1              MS. HARRIS:  It's consistent with the discussions that

2      we have had with our client, your Honor, so you can allocute

3      with him directly, but he is ready to proceed.

4              THE COURT:  Okay.

5              MS. KAMAL:  If I may, your Honor?

6              THE COURT:  Please.

7              MS. KAMAL:  I would also just -- I recognize the Court

8      stated this previously on the record, but on behalf of the

9      government, I would reserve the right to change the

10      government's position at sentencing and in the future once we

11      have had a chance to take a closer look at both the guidelines

12      and all the facts as they are determined at the sentencing.

13              THE COURT:  I was just about to say that again.

14              Mr. Abraham, I just want to make sure you

15      understand -- do you understand everything the government said?

16              THE DEFENDANT:  Yes.

17              THE COURT:  Okay.  So that's the position right now as

18      to how the government believes the guidelines apply to your

19      case.  Right now, as just noted, they are indicating that they

20      believe a guidelines range between 87 and 108 months is the

21      appropriate range.  But I want to just confirm, and I know I

22      said it a minute ago, but that's the prosecutor's present

23      position.  The government can change its mind, and that

24      representation doesn't represent any kind of binding agreement

25      or promise.  Do you understand that?

NAQQyoeP

1          THE DEFENDANT:  Yes.

2          THE COURT:  Even if the prosecutor does not change her

3    mind, or the government change its mind, in the end the

4    sentence is up to me.  I may determine that a different

5    guidelines range is applicable, or I may conclude that a higher

6    or lower sentence than what is provided for in the guidelines

7    is justified.

8          Do you understand that?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Has anyone threatened, bribed, or forced

11    you to plead guilty?

12          THE DEFENDANT:  No.

13          THE COURT:  Has anyone offered you any inducement to

14    plead guilty?

15          THE DEFENDANT:  No.

16          THE COURT:  Has anyone made any promise to you as to

17    what your sentence will be?

18          THE DEFENDANT:  No.

19          THE COURT:  Do you understand that even if anyone

20    attempted to predict what your sentence will be, that that

21    prediction could be wrong.  Do you understand that?

22          THE DEFENDANT:  Yes.

23          THE COURT:  I say that because no one right now knows

24    what your sentence will be.  Your lawyer doesn't know.  The

25    prosecutor doesn't know.  I don't know.  That won't be

NAQQyoeP

1    determined until I get the submissions of the parties, I get

2    the presentence report prepared by the probation department, I

3    do my own independent calculation under the Sentencing

4    Guidelines, and then determine whether there is a basis for not

5    following the guidelines' recommendation.  So even if your

6    sentence is different from what people predicted or what you

7    had hoped for, expected, that won't be a basis to withdraw your

8    plea.

9            Do you understand that?

10           THE DEFENDANT:  Yes.

11           THE COURT:  So now that you have been advised -- let

12   me ask you, I actually didn't ask about forfeiture.

13           In the indictment, there is a forfeiture allegation

14   which reads in part that:  As a result of committing the

15   offenses alleged in Counts One and Two of this indictment, that

16   you shall forfeit to the United States pursuant to Title 18

17   United States Code, Section 981(a)(1)(C) and Title 28, section

18   2461, any and all property, real or personal, that constitutes

19   or is derived from proceeds traceable to the commission of said

20   offenses, including, but not limited to, a sum of money in

21   United States currency representing the amount of proceeds

22   traceable to the commission of said offenses.  And then there

23   is a similar forfeiture allegation for Count Three, and it has

24   what we call a substitute assets provision.

25           Have you discussed this forfeiture allegation with

NAQQyoeP

```
 1    your attorney?

 2               THE DEFENDANT:  Yes.

 3               THE COURT:  Do you admit to the forfeiture allegation?

 4               THE DEFENDANT:  Yes.

 5               THE COURT:  So now that you have been advised of the

 6    charges against you, and the possible penalties you face, and

 7    the rights you're giving up, is it still your intention to

 8    plead guilty to these three charges?

 9               THE DEFENDANT:  Yes.

10               THE COURT:  Now, I am going to ask you the official

11    question with respect to each of the counts.  Then I'm going to

12    ask you to describe in your own words what you did that makes

13    you believe you are guilty of these crimes.

14               With respect to Count One of indictment, how do you

15    plead?

16               THE DEFENDANT:  Guilty.

17               THE COURT:  With respect to Count Two of the

18    indictment, how do you plead?

19               THE DEFENDANT:  Guilty.

20               THE COURT:  With respect to Count Three of the

21    indictment, how do you plead?

22               THE DEFENDANT:  Guilty.

23               THE COURT:  So tell me in your own words what makes

24    you believe that you are guilty of these three counts?

25               THE DEFENDANT:  In 2018, I agreed with another person
```

NAQQyoeP

1  how to obtain money from Amazon by making false requests from

2  Amazon.  I received purchase orders from Amazon for certain

3  products.  I then requested that Amazon change the item

4  information to different product for a better customer

5  experience.  This was false.  By doing so, I obtained certain

6  money from Amazon for products that were not the products they

7  ordered.  After I received the money from Amazon, I transferred

8  some of it between accounts that I held in my own name at

9  different banks.  The amounts exceeded $10,000.  I knew what I

10  was doing was wrong and I deeply regret my actions.

11         THE COURT:  When you did this, where were you

12  physically?  Where did this happen?

13         THE DEFENDANT:  Usually, the office like -- yeah.

14         THE COURT:  Where is your office?

15         THE DEFENDANT:  Rockland County.

16         THE COURT:  Does the government want to make a

17  representation as to venue?  I also want to talk about the wire

18  element too.

19         MS. KAMAL:  Yes, your Honor.  The government would

20  proffer that both that communications, electronic

21  communications by email and through the victim's online retail

22  portal, that those involved communications in interstate

23  commerce because the victims' servers and accounts were outside

24  the State of New York where the defendants' businesses were

25  located in the Southern District of New York.

NAQQyoeP

1          I would also proffer with respect to the monetary

2     transactions that the defendant's accounts were located in

3     banking institutions in the Southern District of New York,

4     whereas the funds received from the victim in this case were

5     located outside the State of New York

6          THE COURT:  Are there any additional questions you

7     think I should ask?

8          MS. KAMAL:  If I may ask the court reporter to read

9     back the first part of the allocution.  He spoke quickly.

10          THE COURT:  I'm going to second that.  If the court

11     reporter could do that, please.  Thank you.

12          (Read back)

13          MS. KAMAL:  May I have a moment to speak with defense

14     counsel?

15          THE COURT:  Yes.  Let me ask one quick question.  Were

16     the communications that you had with Amazon by way of wire,

17     were they on the computer?  Were they on email?  How did you

18     communicate with Amazon?

19          THE DEFENDANT:  Computer internal support.

20          THE COURT:  Okay.

21          Yes go ahead.

22          MS. KAMAL:  Thank you.

23          (Counsel consult)

24          MS. KAMAL:  Thank you, your Honor.

25          THE COURT:  Are there any additional questions you'd

NAQQyoeP

1    like me to ask?

2            MS. KAMAL:  Yes.

3            MS. HARRIS:  Yes.  I think in light of the colloquy I

4    just had with the AUSA, I think -- I want to make clear for the

5    record, and I think this will maybe resolve issues with respect

6    to the acceptance of responsibility, that some of the

7    indictment talks about overshipping.  There are legal issues

8    that were raised in our motions to dismiss related to whether

9    or not that conduct satisfies the elements of wire fraud and

10   whether loss is therefore -- from our perspective, whether the

11   losses associated with that conduct should be appropriately

12   included in the guidelines calculation.  But I want to make

13   clear, and my client can do it himself on the record, or I can

14   do it as his agent on his behalf here, that specific factual

15   conduct with respect to overshipping is not what we are going

16   to be litigating, and he does accept responsibility for that

17   conduct, but we seek a legal sort of ruling whether or not that

18   conduct satisfies the elements of wire fraud.

19           THE COURT:  So you will be seeking that ruling in

20   connection with sentencing or you did previously when you filed

21   the motion to dismiss.

22           MS. HARRIS:  Your Honor, the motion was -- we filed

23   our motion and then plea negotiations ensued, so we can after

24   the plea today, I think the government and we will confer and

25   figure out the best way to tee up these issues and what order

NAQQyoeP

1    to do so and then probably submit a letter to the Court with a

2    proposal with respect to briefing and/or any necessary Fatico

3    issues.  So but I guess just to sort of narrow the issues with

4    respect to the allocution, he could make a short statement with

5    respect to that conduct or this colloquy can suffice.

6            THE COURT:  I'd rather hear from him.  Thank you.

7            THE DEFENDANT:  I also overshipped products to Amazon.

8    What I mean by overshipped is that Amazon ordered and reordered

9    certain items on a regular basis, and I sent them those exact

10   items but in amounts exceeding what they ordered.  I then

11   accurately invoiced Amazon for the amounts I shipped, including

12   the overshipped items, and Amazon paid for some of those

13   purchase orders.  Again, I do deeply regret my actions.

14           THE COURT:  Are there any additional questions the

15   government thinks I should ask?

16           MS. KAMAL:  No, your Honor.  That suffices for the

17   government's purposes.  Thank you.

18           THE COURT:  Can you please summarize what the

19   government's evidence would be if you were to go to trial

20   against Mr. Abraham.

21           MS. KAMAL:  Yes, your Honor.

22           If the government were to proceed to trial, it would

23   present evidence, data, and communications from more than a

24   dozen seized devices from the defendants, including

25   Mr. Abraham, which reflect, among other things, communications

NAQQyoeP

between the defendants regarding how to successfully execute the scheme, extract the maximum amount of money possible from the victim in the shortest period of time, and how to avoid detection.

The government would also put forward data and documents from the victim reflecting the manipulated orders, the manipulated prices, the manipulated products, and the overshipping of the goods that were ultimately -- overshipping meaning excessive quantities of goods that were ultimately sent from the defendant and his co-conspirators to the victim.

The government would also offer the financial records from third parties that would reflect the flow of funds and show the funds traveling from the victim's bank accounts to the defendants and then subsequent transactions reflecting the movement of proceeds among the defendants accounts.

THE COURT:  Ms. Harris, do you agree that there is a sufficient factual predicate for the guilty plea?

MS. HARRIS:  I do, your Honor.

THE COURT:  So, Mr. Abraham, because you acknowledge that you are in fact guilty as charged in the indictment, and because I'm satisfied that you understand your rights, including your right to go to trial, and that you are aware of the consequences of your plea, including the sentence which may be imposed for each of the three counts, and because I find that you are knowingly and voluntarily pleading guilty, I

NAQQyoeP

accept your guilty plea to Counts One, Two and Three of the
indictments.

The probation department will want to interview you in
connection with a presentence report that it will prepare.

Ms. Harris, would you like to be present for the
interview?

MS. HARRIS:  I would, your Honor.  Thank you.

THE COURT:  Good.  Thanks.

If you choose to speak to the probation department,
Mr. Abraham, just make sure that everything you say is truthful
and accurate.  I will read the presentence report very
carefully before imposing sentence.  So please read it
carefully as well.  If there are any issues in it, mistakes or
other issues that you want to raise, just tell your lawyer so
she can raise them with me.

And we have scheduled a sentencing for March 14 at
2:00 p.m.  I do want to refer counsel to my individual rules
and practices in criminal cases available on the court's
website.  They contain some rules regarding sentencing
submissions.  Defense submissions are due two weeks prior to
sentencing, and the government's submission is due one week
prior to sentencing.

Of course, if there are issues that need to be -- if
we need to have a Fatico hearing, for example, if there are
disputed issues with respect to forfeiture or restitution and

NAQQyoeP

1    you would like to brief them earlier, or just raise them for me

2    earlier, feel free to do so, particularly with respect to a

3    Fatico.  We would obviously need to schedule that, so it would

4    be helpful for me if you can let me know in advance of the

5    sentencing how much time I need to schedule what you think will

6    happen, okay?

7                  MS. HARRIS:  We will, your Honor.

8                  THE COURT:  Is there any objection on the government's

9    part to continuing Mr. Abraham's conditions of bail?

10                 MS. KAMAL:  No, your Honor.

11                 THE COURT:  Any other applications at this time?

12                 MS. KAMAL:  Your Honor, at this time I just want to

13   make clear one sort of housekeeping issue with respect to the

14   charging instrument here.

15                 As everybody is aware, we had thought we would be

16   proceeding pursuant to a plea agreement and a superseding

17   information, and obviously we went forward today on the basis

18   of the indictment.  The superseding information that was

19   previously filed with respect to the guilty plea of Zishe

20   Abraham, Mr. Yoel Abraham's co-conspirator, named Mr. Yoel

21   Abraham in that information.  Obviously, that information was

22   only entered on the docket with respect to Mr. Zishe Abraham

23   who pled guilty to it.  But I wanted obviously to point out for

24   the Court that there is an information that is on the docket

25   that names Mr. Yoel Abraham, but he has obviously not waived

NAQQyoeP

1    indictment, and were he to waive indictment here today, at

2    sentencing the government would not be dismissing the

3    underlying indictment, and we've proceeded as though we are

4    going ahead on the initial indictment in this matter.

5        THE COURT:  Understood.  Is there anything you think

6    we should do to remedy that?

7        MS. KAMAL:  So I don't think so, your Honor.  I mean,

8    I've looked at Rule 7(b), and it does not appear to me that the

9    superseding information could be operative against the

10   defendant since he has not waived here today.  And obviously

11   we're having this colloquy now, and we're all aware of where we

12   stand, but I did want to flag it for the Court.  I will give it

13   some additional thought, and if I think there is any sort of

14   housekeeping issue, any amendment or correction that needs to

15   happen, I will obviously let the Court know.  But for now I

16   think it is fine the way we proceeded today, but I did want the

17   record to reflect that.

18       THE COURT:  That's helpful.  Thanks.  I think it would

19   be helpful if the two of you speak, counsel, and just submit a

20   letter to me on the record, just, you know, file it on the

21   docket indicating what your understanding is and what you

22   jointly think is the best course of action.  Obviously, if you

23   disagree about the best course of action, you can indicate that

24   in a letter.  But I think it is prudent to have a letter on the

25   docket in addition to this colloquy.  Okay?

NAQQyoeP

1            MS. KAMAL:  Certainly, your Honor.

2            THE COURT:  Any further applications at this time?

3            MS. HARRIS:  Nothing further.  Thank you very much.

4            THE COURT:  Thank you.  We're adjourned.

5            (Adjourned)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25