

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza*
*New York, New York 10278*

June 5, 2024

By ECF
The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

    Re:    *United States v. Yoel Abraham et al.,* 20 Cr. 411 (RA)

Dear Judge Abrams:

I write in response to the Court's order of May 29, 2024, to address (1) the Government's intended loss calculation under U.S.S.G. § 2B1.1 ("Section 2B1.1") and how it differs from the calculation set forth in the Pre-Sentence Report ("PSR"); (2) how the Government calculated forfeiture for defendant Yoel Abraham; and (3) how the Government calculated restitution and how each defendant contributed to the restitution. These issues are addressed in turn below.

    Loss Calculation

The defendants used a variety of deceptive practices to defraud Amazon, which complicates the loss calculation in this matter. The scheme involved at least three different forms of deceptive conduct: (a) "pure" overshipping (in which the defendants shipped excessive quantities of products that Amazon had, in fact, ordered, and at the agreed price); (b) product manipulation combined with overshipping (in which the defendants manipulated the product pages for items ordered by Amazon to inflate prices and then shipped excessive quantities); and (c) product substitution combined with overshipping (in which the defendants manipulated the product pages for items ordered by Amazon to send different products, inferior in value, and in excessive quantities).[1] Each defendant engaged in some combination of these deceptive practices to varying degrees.

    At the defendants' request—and given the complexity of loss calculation across all four defendants—the Government and counsel for all four defendants negotiated a global resolution

---

[1] Yoel Abraham also sold Amazon counterfeit goods, which is arguably a variety of product substitution.

that would take a uniform approach to the calculation under Section 2B1.1, notwithstanding the differences between each defendant's respective "mix" of deceptive practices. The proposed global resolution calculated the enhancement under Section 2B1.1 based on the gain to each defendant.[2] On the eve of his plea proceeding, however, Yoel Abraham opted not to plead guilty pursuant to that agreement because he wanted to contest the Section 2B1.1 calculation, to challenge whether overshipping could constitute fraud under the wire fraud statute at all. In the interest of fairness to the other three defendants, the Government allowed them to plead guilty to the negotiated plea agreements, despite the fact that the plea was no longer global.[3]

As set forth in the Government's sentencing submission, overshipping as practiced by Yoel Abraham and his co-defendants clearly satisfies the requirements of a "scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises" under the wire fraud statute. 18 U.S.C. § 1343. Exhibit 4A,[4] attached hereto, reflects the total value of goods that Amazon ordered from Yoel Abraham's vendor accounts (Column I, $3,915.930.48), the total amount that Yoel Abraham invoiced Amazon (Column J, $25,732,135.28), and then sets forth the total amount that Yoel Abraham tried to trick Amazon into paying him for the excessive goods (Column K, "overage cost," $21,816,204.62). The intended loss corresponds to $21,816,204.62 (Column K). The latter figure reflects a reasonable calculation of intended loss caused by Yoel Abraham alone. This is the loss calculation cited throughout the Government's Sentencing Submission dated May 27, 2024. ("Gov. Sent. Sub." at 4, 24 – 26, 30).

The intended loss calculation set forth in the PSR is based on the same data reflected in Exhibit 4 but reflects an inadvertent error. (PSR ¶ 41). The PSR states that the defendant invoiced Amazon approximately $25,003,987 for overshipped goods when Amazon had ordered just $2,830,125 and calculates an intended loss of $22,173,851.28. (PSR ¶¶ 41, 46). This is inaccurate

---

[2] As set forth in the Government's sentencing submission in this matter, when the defendants engaged in product substitution or modification, they frequently overshipped these orders as well. The negotiated calculation of U.S.S.G. § 2B1.1 for each defendant did not account for the defendants' gains by virtue of substituting products or inflating the prices during plea negotiations because this would have been too burdensome to calculate for all four defendants.

[3] Yoel Abraham's choice to opt out of the global plea necessitated additional inquiry and work on behalf of the Government and the victim to determine a reasonable estimate of loss for his deceptive conduct. As a result of that additional investment of time and resources, and in the absence of a global plea, the Government has concluded that the most reasonable estimate of the defendant's loss is the intended loss as reflected in his overshipping, even though it does not capture his intended losses from product substitution and manipulation. If the latter forms of fraud were considered, the defendant's intended loss would be *at a minimum* $8,235,250, which reflects just the amount that Yoel Abraham induced Amazon to overpay on just 29 sales to of the most egregious instances of product manipulation/substitution identified to date. During the charged period, the defendant made nearly 1,500 sales to the victim.

[4] Exhibit 4A is a selection of data from Exhibit 4, USAO_00000018, filtering for just those vendor codes attributable to the defendant's vendor accounts: YSASB, YSASE, YH6T1, and BDC7A. The quantity of goods ordered by Amazon according to the purchase order is reflected in Column D, "quantity_submitted."

because it inadvertently fails to include orders placed to and invoices submitted under one of the defendant's vendor codes (YH6TI) for the charged period. When all Yoel Abraham vendor codes are included, the correct figures, reflected in Exhibit 4A, are $25,732,108.10 invoiced against $3,915,903.48 in orders placed. The intended loss here is properly calculated as the amount invoiced *in excess* of what Amazon had agreed to purchase.[5] Accordingly, the intended loss for Yoel Abraham is reasonably estimated at $21,816,204.62.

Forfeiture

The Government reached a forfeiture amount of $9,033,745 by calculating the total amount Amazon paid to Yoel Abraham's vendor accounts, as set forth in the spreadsheet attached hereto as Exhibit 5.[6] *See* 18 U.S.C. §§ 981 (a)(1)(C), 981(a)(2)(A) and (B). This figure represents the total amount that the victim paid Yoel Abraham in connection with scheme and the defendant bears the burden of proof with respect to any direct costs that may reduce this figure with respect to legitimate items sold. *See* 18 U.S.C. 981 § (a)(2)(A). It also bears noting that the defendant's price and product substitution on just the 29 product orders cited in the Government's Sentencing Submission caused Amazon to *overpay* by at least $8,235,250 on these 29 orders alone. (Gov. Sent. Sub. at 9, 25). Given the defendant's egregious price gouging through product manipulation, the Government respectfully submits that the entire $8,235,250 that Amazon overpaid on these goods constitutes a minimum net profit to the defendant from the scheme and, accordingly, should be the "floor" for any forfeiture imposed on Yoel Abraham. In addition, because Yoel Abraham provided counterfeit and/or gray market goods, all payment received for these items should be forfeited. (*See* Gov. Sent. Sub. at 26-27; 18 U.S.C. § 981(a)(2)(B)).

Restitution

The Government initially calculated restitution of approximately $17,981,253.99, although further review of the evidence leads the Government to revise this amount downward, to $14,292,004.60. The latter figure reflects Amazon's losses from product substitution and price manipulation for just the 48 purchases reflected in the Victim Impact Letter's Exhibit A ($14,292.004.67), counsel fees in connection with the criminal matter ($66,500), and $676,000 in losses attributable to counterfeit or gray market goods sold by Yoel Abraham. (*See* Gov. Sent. Sub., Ex. 1 at 7). It does not include the amounts claimed as a loss by Amazon on the 48 largest instance of "pure" overshipping.

The revised restitution figure accounts for the fact that losses attributable to "pure" overshipping are difficult to calculate: although the victim's systems were abused and payments

---

[5] Reducing the amount invoiced by the value of goods Amazon actually ordered comports with the Guidelines instruction to provide "credits against loss" in the intended loss calculation. *See* U.S.S.G. § 2B1.1, Application Note 3(E)(i). No further credit against loss is warranted here. *United States v. Craiglow*, 432 F.3d 816, 820–21 (8th Cir. 2005) (rejecting argument that "one who commits a fraud is entitled to his business expenses" incurred in perpetrating that fraud).

[6] USAO_00000010, attached hereto as Exhibit 5. Filtering Column A ("Vendor") and selecting Golden Gabs, Matrix Freedom, YSA Sales Inc. c/o One Source Fulfillment, and YSA Sales Inc. and totaling the sum of payments in Column F.

were issued for unwanted goods, Amazon did receive certain goods and was able to re-sell them in many instances. This sets losses from "pure overshipping" apart from losses caused by product manipulation/substitution combined with overshipping. In the latter instances, Amazon was induced to pay such wildly inflated prices that it is inconceivable that those losses could have been recuperated (*i.e.*, inducing Amazon to pay $101.11 for a single bar of Dove soap, and then fraudulently inducing payment for 10,330 bars at this price; $86.74 for a single package of baby wipes, and then fraudulently inducing payment for 9929 packages at this price). (Gov. Sent. Sub. at 19-20). Accordingly, the Government seeks restitution based on the more conservative amount of $14,292,004.60.

Based on the foregoing, the restitution owed to the victim by each of the defendants is as follows:

| **Defendant** | **Product Substitution**[7] | **Attorney's Fees** | **Counterfeit Goods** | **TOTAL** |
|---|---|---|---|---|
| Yoel Abraham | $8,235,250.00 | $16,625 | $676,000 | $8,927,875 |
| Zishe Abraham | $2,390,067.19 | $16,625 | N/A | $2,406,692 |
| Shmuel Abraham | $2,291,651.89 | $16,625 | N/A | $2,308,276.89 |
| Heshl Abraham | $1,375,035.59 | $16,625 | N/A | $1,391,660.59 |

Conclusion

For the foregoing reasons, the Government respectfully submits that the Court find an intended loss attributable to Yoel Abraham of $21,816,204.62; forfeiture in an amount to be determined by the Court, but no less than $8,235,250; and restitution attributable to the defendant in the amount of $14,292,004.60, of which $8,927,875 is attributable to Yoel Abraham.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____
Jilan J. Kamal
Assistant United States Attorney
(212) 637-2192

cc: All counsel by ECF

---

[7] *See* Table of Defendants' Substitution Fraud, excerpted from Exhibit 1 (Victim Impact Statement), and annotated to attribute vendor codes to each defendant, attached hereto as Exhibit 6.